UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARY E. BUTLER                          CIVIL ACTION

VERSUS                                  NO:10-0857

ERIC K. SHINSEKI, SECRETARY,            SECTION: R(4)
DEPARTMENT OF VETERANS
AFFAIRS

ORDER AND REASONS

Before the Court is defendant Eric Shinseki's motion to dismiss and motion for summary judgment.  For the following reasons, the Court GRANTS defendant's motion.


I.   **Background**

Plaintiff, Mary E. Butler, worked as a Vocational Rehabilitation Counselor at the Veterans Affairs Medical Center Facility in New Orleans, Louisiana from July of 2000 to August of 2007.  In March of 2002, plaintiff contacted her union representative and an EEO counselor because she felt that her coworkers were requiring her perform duties beyond those included in her job description.  Plaintiffs' informal EEO complaint named Dr. Jeffrey West, her supervisor, as the responsible management official.  On April 8, 2002, after learning that she could not pursue both a grievance and an EEO complaint simultaneously,

plaintiff withdrew her EEO complaint.[1]

On March 15, 2004, plaintiff was asked to unlock a vacant office door so that a psychiatrist could see his patients.  The VA facility was undergoing construction at the time of this incident, and part-time physicians, residents and interns would use the vacant offices in the Homeless Units to see patients. Because plaintiff was the only Homeless Unit staff member present who had previously been given a "master key" that would open these offices, Pat Tillman, a nurse, asked plaintiff to unlock a door.  Plaintiff refused to do so.  Pat Tillman then contacted Vickie Starks, a supervisor, who also requested that plaintiff unlock the door.  Plaintiff does not dispute her failure to comply with these requests, but asserts that she had been issued a new key which would not open the door, and did not have the master key with her.

Ten days after the door opening incident, on March 25, 2004, plaintiff filed an informal EEO complaint for discrimination based on retaliation for prior EEO activity.  On April 23, 2004, she was issued a notice of a right to file a discrimination complaint, and May 6, 2004, plaintiff filed a formal complaint. Plaintiff's complaint alleged that she was harassed by Dr. Jeffrey West, her former immediate supervisor, and Ms. Starks, the supervisor involved in the March 15, 2004 door-opening

---

[1]     R. Doc. 111-9.

incident.  In support of her allegation of harassment by Dr.
West, plaintiff referred to an event on May 13, 2003, when Dr.
West asked her to participate in goal sharing to "see if
[plaintiff] was passive or aggressive"[2], noted that Dr. West and
other co-workers harassed her during staff meetings, and alleged
that Dr. West continued to harass her after he was no longer her
supervisor.  Plaintiff also asserted that she met with Nick
Gaudet at the Inspector General's office to discuss this
harassment by Dr. West.  In support of her allegation of
harassment by Ms. Starks, plaintiff referred to the incident on
March 15, 2004, when Ms. Starks requested that she unlock office
doors.

On July 13, 2004, before the agency issued its final
decision regarding plaintiff's EEO complaint, but after the
complaint was filed, plaintiff received a letter of reprimand.
This disciplinary action related to plaintiff's refusal to unlock
a door on March 15, 2004.  The letter of reprimand charged
plaintiff with "[d]eliberate failure to follow a proper order,
delaying patient care" and "disrespectful conduct to other
personnel."[3]  Ms. Starks initiated the disciplinary action.  Dr.
Jackson-Triche, Director of Mental Health Services, finding
sufficient grounds existed to sustain the proposed charges,

---

[2]     R. Doc. 111-10.

[3]     R. Doc. 1-4.

issued the letter of reprimand.

On July 20, 2004, the agency dismissed plaintiff's May 6, 2004 complaint for retaliation, finding that plaintiff did not allege a continuing violation, and did not demonstrate any injury in fact.[4]  Plaintiff did not appeal this final agency decision.

On September 3, 2004, the plaintiff filed a new EEO complaint asserting that she was discriminated against based on retaliation when she was sent a letter of reprimand.[5]  Plaintiff asserted claims of retaliation and harassment.  Specifically, plaintiff reasserted the claim of harassment by Dr. West, her former supervisor, and alleged that her co-workers conspired with management officials to stage an event so that management officials could issue a letter of reprimand.  Plaintiff cited the March 15, 2004 door opening incident as an example of staff harassment.[6]  A formal EEOC investigation, limited to Butler's claim of retaliation based on the letter of reprimand, was conducted.  On February 4, 2005, at the conclusion of the investigation of her claim, the outside investigator issued a Report of Investigation.[7]  Plaintiff was given a copy of the report and a notice of her right to request either a final agency

---

[4]    R. Doc. 111-10.

[5]    R. Doc. 111-5 at 26.

[6]    R. Doc. 111-3 at 36.

[7]    R. Doc. 111-3.

decision or a hearing before an Equal Employment Opportunity Commission ("EEOC") Administrative Judge.  Plaintiff timely requested a hearing, and the hearing was held on July 18, 2006. The Administrative Judge issued a decision on August 7, 2006, and found that plaintiff failed to prove that she was subjected to the alleged discrimination.[8]  The agency issued a final order adopting the Administrative Judge's findings on August 22, 2006,[9] and the plaintiff appealed to the EEOC Office of Federal Operations ("OFO").  On July 10, 2008, the EEOC OFO affirmed the agency's final order.[10]  On October 8, 2008, plaintiff filed a complaint in federal court in the Northern District of Georgia.[11] In her complaint, plaintiff asserts that she was discriminated against in violation of Title VII.  Plaintiff alleges violations of Title VII based upon termination of employment, discrimination due to race, harassment, reprisal and acts of retaliation, slander, defamation of character, negligence, infliction of emotional distress, invasion of privacy, failure to receive an appropriate response from hospital police after three notifications, and conspiracy to bring charges against plaintiff. On March 13, 2010, the case was transferred to the Eastern

---

[8]     R. Doc. 111-6.

[9]     R. Doc. 111-7.

[10]    R. Doc. 111-8.

[11]    R. Doc. 1.

District of Louisiana.[12]  Defendant's motion to dismiss and motion for summary judgment is now before the Court.

## II.  Legal Standard

Dismissal is required if a district court lacks jurisdiction over the subject matter of a plaintiff's claims.  *See* FED. R. CIV. P. 12(b)(1).  Dismissal for lack of subject matter jurisdiction may be made on any one of three separate bases: (1) the complaint alone, presuming the allegations to be true; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts.  *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).  A court generally cannot go outside the complaint in determining a motion to dismiss.  *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006).  A court may, however, "rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). The party asserting jurisdiction bears the burden of establishing that the district court possesses jurisdiction.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  A court's

---

[12]     R. Doc. 59.

dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not ordinarily prevent the plaintiff from pursuing the claim in another forum.  *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must

come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."  *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See id*. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

## III. Discussion

### A. Motion to Dismiss

The defendant moves to dismiss all of plaintiff's

8

unexhausted claims.  According to the VA, Butler is foreclosed from pursing, and the Court lacks jurisdiction over, any claims of other than her retaliation claim based on the letter of reprimand plaintiff received on July 13, 2004.

1. Administrative Exhaustion and Timely Filing Requirements

Title VII requires a federal employee to exhaust her administrative remedies before seeking judicial relief from discriminatory employment practices.  *See* 42 U.S.C. § 2000e-16(b)(c); *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832-33 (1976)("Initially, the complainant must seek relief in the agency that has allegedly discriminated against him."); *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)(noting that filing a charge of discrimination with the EEO division of the employee's agency is a precondition to filing a lawsuit).  The plaintiff also must file the federal lawsuit in a timely manner.  *See Tolbert v. United States*, 916 F.2d 245, 247 (5th Cir. 1990)(stating that "the complaint must be filed within the time allotted by Title VII").  A federal employee who has exhausted a formal EEO complaint of discrimination may file a civil action in district court within 90 days of the date on which she receives the Commission's final decision on appeal.  42 U.S.C. § 2000e-16(c); 20 C.F.R. § 1614.407.  Provided that administrative remedies are properly exhausted, and regardless of their substantive result, a plaintiff is entitled to a civil trial *de*

9

*novo* with respect to her discrimination claims. *See Chandler v. Roudebush*, 425 U.S. 840, 862 (1976); *Aldrup v. Caldera*, 274 F.3d 282, 285-87 (5th Cir. 2001).

In determining whether a plaintiff has exhausted her administrative remedies, the Court must balance two competing policies. *See McClain v. Lufkin Indus. Inc.*, 519 F.3d 264, 273 (5th Cir. 2008)("competing policies underlie judicial interpretation of the exhaustion requirement"). First, "because 'the provisions of Title VII were not designed for the sophisticated,' and because most complaints are initiated *pro se*, the scope of an EEOC complaint should be construed liberally." *Pacheco*, 448 F.3d at 788. At the same time, "the primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims." *Id.* at 788-89. The Fifth Circuit balances these competing policies by construing an EEO complaint "broadly" but in light of the administrative investigation that can "reasonably be expected to grow out of the charge of discrimination." *McClain*, 519 F.3d at 273. Thus, a Title VII lawsuit may encompass allegations "like or related to allegation[s] contained in the EEOC charge and growing out of such allegations during the pendency of the case before the Commission." *Id.* (citing *Sanchez v. Standard Brands, Inc.*, 431

F.2d 455, 465 (5th Cir. 1970)); *see also* 4-76 LARSON, EMPLOYMENT
DISCRIMINATION § 76.06. ("[I]f an [EEOC] investigation has
actually been conducted, most courts hold that the scope of the
complaint is limited to the actual scope of the investigation.").
The exhaustion analysis is ultimately fact-intensive and looks to
the substance of the administrative charge. " *McClain*, 519 F.3d
at 273.

    2. Exhaustion and Timely Filing of Plaintiff's Claims

    Butler's initial EEO complaint included claims of
retaliation and harassment.  The agency limited the scope of the
EEOC investigation to plaintiff's claim that she was
discriminated against based on retaliation when she received a
disciplinary action.  In her federal complaint, plaintiff asserts
claims of harassment, retaliation, discrimination due to race,
termination of employment, slander, intentional infliction of
emotional distress, negligence, invasion of privacy, defamation
of character, failure to receive appropriate response from
hospital police and conspiracy to bring charges against the
plaintiff.[13]  The only claim that is timely, has been
administratively exhausted, and can be asserted under Title VII
is Butler's claim of retaliation based on the letter of

---

    [13]    R. Doc. 1 & 11.

reprimand.

First, many of the asserted claims are not cognizable causes of action under Title VII.  Title VII provides the exclusive and preemptive remedy for claims of discrimination in federal employment.  *See Brown v. General Serv. Admin.*, 425 U.S. 820, 829 (1976)("Congress intended [Title VII] to be exclusive and preemptive regarding federal employment").  A federal employee's causes of action against his employer based on any theory other than Title VII, such as those alleged by Butler in this case, must be dismissed.  *See Rowe v. Sulliva*n, 967 F.2d 186, 189 (5th Cir. 1992)(finding plaintiff's claims under 42 U.S.C. §§ 1981, 1983 and 1985(3) preempted by Title VII); *Perez v. Federal Bureau of Investigation*, 71 F.3d 513, 515 (5th Cir. 1995)(same as to federal employee's claims brought under *Bivens*); Hampton *v. I.R.S.*, 913 F.2d 180, 182-83 (5th Cir. 1990)(same as to federal employee's claims of intentional infliction of emotional distress).  Butler's claims of slander, intentional infliction of emotional distress, negligence, invasion of privacy, defamation of character, failure to receive appropriate response from hospital police and conspiracy are preempted by Title VII and must be dismissed.

Second, many of the alleged discriminatory actions plaintiff asserts in her complaint are not timely.  A federal employee who

12

has exhausted a formal EEO complaint of discrimination may file a civil action in district court within ninety days of the date on which she receives the Commission's final decision on an appeal. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.  "The requirement to file the lawsuit within the ninety-day limitation period is strictly construed."  *Bowers v. Potter*, 113 Fed. Appx. 610, 612 (5th Cir. 2004); *see e.g., Butler v. New Orleans Parish School Board*, 2001 WL 1135616 (E.D. La. Sept. 25, 2001) (dismissing a *pro se* plaintiff's Title VII complaint that was filed one day beyond the ninety-day period).  The ninety-day limit is not jurisdictional, but rather a statutory precondition to filing suit, *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002), subject to doctrines such as equitable tolling. *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 880 (5th Cir. 2003). The Fifth Circuit recognizes three bases for equitable tolling the ninety-day limitations period in Title VII cases: (1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's lack of awareness of the facts supporting her claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about his rights. *Bradshaw v. City of Gulfport*, 2011 WL 2206685, at *1 n.2 (5th Cir. Jun. 7. 2011)(citing *Manning*, 332 F.3d at 880).  None of these recognized bases are applicable to plaintiff's case, and

13

therefore the ninety-day limitations period cannot be equitably tolled.

Plaintiff asserted the claims that she was harassed by Dr. West and other staff in her EEO complaint in May of 2004.[14] Plaintiff does not allege events beyond those listed in that complaint as support for these claims. The agency dismissed plaintiff's May 2004 complaint on July 20, 2004.[15] Plaintiff did not appeal that decision, nor did she file a civil action within ninety days of the final agency decision. Because plaintiff did not timely file a complaint in federal court, the claims that Butler previously asserted in her May 2004 EEO complaint must be dismissed.

Third, Butler's causes of action for termination of employment have not been administratively exhausted. Butler has not previously asserted these claims or pursued any EEO remedy on the basis of termination of her employment. To timely initiate a discrimination claim, a federal employee must contact an EEO Counselor "within 45 days of the date of the matter alleged to be discriminatory...." 29 C.F.R. § 1614.105(a)(1). "Failure to notify the EEO counselor in timely fashion may bar a claim,

---

[14]    R. Doc. 111-10.

[15]    *Id.*

14

absent a defense of waiver, estoppel, or equitable tolling."
*Pacheco*, 966 F.2d at 905; *see also Henrickson v. Potter*, 327 F.3d
444, 447 (5th Cir. 2003) (affirming summary judgment in favor of
the Postal Service because plaintiff failed to contact an EEO
counselor within 45 days of the alleged discriminatory conduct).
Butler failed to contact an EEO counselor within 45 days of her
termination and therefore is barred from asserting this claim in
federal court.

Butler's claim related to performing duties beyond the scope
of her job description also must be dismissed.  Here too,
plaintiff failed to fully exhaust her administrative remedies.
Plaintiff filed an informal EEO complaint related to this claim
in 2002, but she voluntarily withdrew it before a decision was
reached on the merits.[16]  "[A]bandonment of the administrative
process may suffice to terminate an administrative proceeding
before a final disposition is reached, thus preventing exhaustion
and precluding judicial review." *Devaughn v. United States Postal
Serv.*, 293 Fed.Appx. 276, 281 (5th Cir. 2008); *see also Bower v.
Nicholson*, 271 Fed.Appx. 446, 449 (5th Cir. 2008)(affirming
district court's dismissal of plaintiffs claims on the grounds
that he had voluntarily withdrawn them).  Plaintiff voluntarily

---

[16]    R. Doc. 111-9.

withdrew the claim that she was performing duties beyond the scope of her job description.  Therefore, she did not exhaust her administrative remedies, and the claim must be dismissed.

Finally, plaintiffs claims alleging racial discrimination must be dismissed.  Butler's EEO charge does not allege racial discrimination or assert facts that would have put the EEOC on notice to investigate a racial discrimination claim. Discrimination and retaliation claims are distinct, and the allegation of one in an EEOC charge does not exhaust a plaintiff's remedies as to the other.  *Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 F. App'x 917, 921 (5th Cir. 2009); *see also Randel*, 157 F.3d at 395 (finding failure to exhaust a racial discrimination claim when the EEOC charge only included reprisal); *Drake v. Nicholson*, 324 F. App'x 328, 330 (5th Cir. 2009) (stating that plaintiff had a duty to exhaust his administrative remedies before bringing his retaliation claims). The Court finds, therefore, that Butler has not exhausted her remedies as to her allegation of racial discrimination, and the claim of racial discrimination must be dismissed.

Plaintiff's claim of retaliation based on the letter of reprimand issued on July 13, 2004 is her only claim that meets the prerequisites for filing suit in federal court.  The Court must next decide whether defendant is entitled to a grant of

16

summary judgment on the merits of this claim.

   *B. Motion for Summary Judgment*

   Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee who has opposed an employment practice made unlawful by Title VII.  42 U.S.C. § 2000e-3(a).  Under the traditional *McDonnell Douglas* burden-shifting framework, the plaintiff must first establish a *prima facie* case of retaliation.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  This requires putting forth evidence that: (1) the plaintiff engaged in an activity protected by Title VII; (2) the employer took an adverse employment action against the plaintiff; and (3) a causal connection exists between the protected activity and the adverse employment action.  *Aryain v. Wal-Mart Staroes Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). If the plaintiff makes a prima facie showing, the burden shifts to the employer to provide a legitimate, non-retaliatory reason for the adverse employment action. *Id.*  Finally, if the employer meets this burden of production, the burden shifts to the plaintiff to prove that the employer's legitimate reason is a pretext for the actual retaliatory reason. *Id.*

   1. Protected Activities

   An employee engages in activity protected by Title VII if

she opposes any employment practice made unlawful by Title VII, or if she participates in any manner in a proceeding under Title VII.  42 U.S.C. § 2000e-3(a).  Here, Butler engaged in protected activity when she filed an informal EEO complaint in 2002 and a formal EEO complaint in 2004.  Thus, plaintiff has established the first element of her *prima facie* case of retaliation.

### 2. Materially Adverse Employment Action

Next, Butler must demonstrate that the VA took an "adverse employment action" against her.  *Aryain*, 534 F.3d at 484.  In the retaliation context, a plaintiff must show that a reasonable employee would have found the challenged employment action "materially adverse."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  An employment action is materially adverse if it would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal citations omitted).  An employment action is not materially adverse if it amounts only to "petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

Butler asserts that her employer engaged in a retaliatory act by issuing a letter of reprimand.  In *DeHart v. Baker Hughes Oilfield Operations*, the Fifth Circuit held that allegedly retaliatory written warnings for insubordination, being

argumentative and for excessive absenteeism would not have
dissuaded a reasonable worker from making or supporting a charge
of discrimination, and therefore did not constitute materially
adverse employment actions.  214 Fed.Appx. 437, 442 (5th Cir.
2007)); *see also Noack v. YMCA of Greater Houston Area*, 418
Fed.Appx. 347 (5th Cir. 2011)(finding because the employee did
not suffer any signficant harm as a result of a written
reprimand, it was not an adverse employment action); *Mattern v.
Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997)(documented
reprimands were not adverse employment actions because they were
not ultimate employment decisions and would not have more than a
tangential effect on a possible future ultimate employment
decision)(reversed on other grounds); *Bui v. Horseshoe Entm't*,
2009 WL 587084, at *12 (W.D. La. March 5, 2009)(plaintiff's
assertions that her supervisors "created a paper trail of written
warnings to get rid of her" and subjected her to negative
treatment at work were not adverse employment actions in the
retaliation context); *Watkins v. Tex. Dep't of Criminal Justice*,
2006 WL 1581833, at *8 (W.D. Tex. Jun. 6, 2006)("letters of
reprimand are not adverse employment actions").  The Court finds
that a single letter of reprimand would not dissuade a reasonable
employee from making or supporting a charge of discrimination.
Butler, therefore, cannot establish the second element of her

*prima facie* case of retaliation.

    3. Causation

    Even if the letter of reprimand was a materially adverse
employment action that would have deterred a reasonable employee
from complaining about discrimination, Butler cannot demonstrate
the third element of her *prima facie* case: a causal link between
her protected activities and the disciplinary action.  In some
cases, causation may be inferred from a close temporal proximity
between a protected activity and an adverse employment action.
*Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th
Cir. 2007).  But, under Fifth Circuit law, a plaintiff cannot
rely solely on temporal proximity to establish her *prima facie*
case.  *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472
(5th Cir. 2002)(finding a five-month period between protected
activity and adverse employment action did not establish *prima
facie* retaliation claim).  Butler filed an informal
discrimination complaint on March 25, 2004, which led to the
filing of a formal complaint on May 6, 2004.  The letter of
reprimand was issued on July 13, 2004.  There is, therefore,
temporal proximity between a protected activity and the
disciplinary action.  But plaintiff does not provide additional
evidence to demonstrate a causal link.  Plaintiff argues that the
letter of reprimand was an act of retaliation because her former

supervisor, Dr. West, "was in a position of authority and knew others in administrative positions thereby misusing their positions to bring charges against me."[17]  Dr. West, however, was not involved in the decision to issue the letter of reprimand. The two employees that were involved, Ms. Starks or Dr. Jackson-Triche, did not know that plaintiff filed an EEO complaint on May 6, 2004, or that she filed a complaint in 2002, when they decided to issue the letter of reprimand.  Ms. Starks swore under oath that she did not become aware of plaintiff's protected activity until July 16, 2004, after the letter of reprimand was issued.[18] Dr. Jackson- Triche swore under oath that prior to her written affidavit she was not aware of plaintiff's EEO activity.[19]  The court finds, therefore, that plaintiff has failed to demonstrate the causation element of her case of *prima facie* retaliation. Because the plaintiff has failed to meet this initial burden, a grant of summary judgment in favor of the defendant is appropriate.

---

[17]    R. Doc. 111-4 at 26.

[18]    *Id.* at 41.

[19]    *Id.* at 52.

**IV.   Conclusion**

For the foregoing reasons, the Court GRANTS defendant's Motion for Summary Judgment.

New Orleans, Louisiana, this <u>4th</u> day of August, 2011

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE